The next case this morning is 523-0602, People v. Amos. Arguing for the appellant is Rachel Cincinnati. Arguing for the appellee is Stephanie Raymond. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. We're running a tad bit late. We've had some arguments go a little longer than expected. I will say also, I don't know if it's internet issues, storms going on, but we had experienced some recording issues in a case earlier. So, similar to the last case, Madam Clerk, if we run into those issues, please let us know. That way I can stop counsel, so we want to make sure we can get a good recording of the argument. Good morning, your honors, counsel. My name is Rachel Cincinnati from the Office of the State Appellate Defender on behalf of Mr. Delon Amos. I will be focusing on Issue 1, but I'm happy to answer any questions this court has regarding Issue 2. We could not have a less reliable witness. When counsel confronted Benjamin with his recantation statements and asked, you put your name to paper saying that these things didn't happen, correct? Benjamin responded, yeah, I mean, I write things all the time. I write things all the time. The state's key witness writes things all the time. Daniel Benjamin does not care about the truth. And because the state's only eyewitness does not care about the truth, we cannot believe him. And because we cannot believe him, the state has not proved Mr. Amos guilty beyond a reasonable doubt. Counsel, this was a bench trial, right? That is right. Well, aren't we supposed to defer to the trial court's assessment of credibility? Deference is the standard. However, sometimes judges get it wrong. In this case, we have a witness who has written two recantation statements, lies under oath, has a serious criminal history, admits he writes things all the time. And in that way, he's impliedly acknowledging that he's an untruthful person. And I think it reaches the bar of only an unreasonable trier of fact would have found him credible. And if we point, if we look at the court's finding Mr. Amos guilty, denying the motion for a directed verdict and denying the motion for a new trial, the court didn't once even mention any of the impeachment evidence against Benjamin, which is concerning because his testimony is the absolute crux of the case. Without Benjamin, the state has no case against Mr. Amos. But at the trial, defense counsel was able to bring out these inconsistencies, the criminal history, able to impeach the testimony of the witness, correct? That is correct. So it is true that the trial court did hear this. But with the amount of impeachment evidence and credibility concerns against Benjamin, it's our position that the court got this wrong. And it's possible that reasonable minds sometimes get things wrong. And Benjamin is frankly an inherently unreliable witness because of his recantation statements, his testimony, and his criminal history. He wrote two recantation statements, one in exchange for money, the other in exchange for the co-defendant's brother posting his bond while he awaited trial for aggravated criminal sexual abuse. And the second recantation statement also came with an additional promise not to testify against the co-defendant's brother. Additionally, we have Benjamin lying under oath. He describes the first statement as me being forced to write something. But then he goes on to explain that he was approached by the co-defendant's brother and he was asked if he would write the statement because they were offering up money. This is not force. This is a voluntary quid pro quo exchange. And so Benjamin just cannot be trusted because we see him lying under oath. Further, his criminal history involves all felonies involving dishonesty. The United States Supreme Court has said felony convictions are a basis to infer the witness's character such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. And Benjamin is a perfect example of why felony convictions are useful for credibility attacks because, as I just mentioned, we do have him lying under oath. Our third district appellate court in Peeble v. Medrano also has said that a serious felony conviction evinces a disrespect for societal order and thus adversely affects a witness's veracity, which again is exemplified here by Benjamin's willingness to recant statements, promise not to participate in a case where the defendant's brother or brother-in-law is not a witness. Criminal prosecution and lie under oath. And the state consistently will seek to admit felony convictions for purposes of impeachment if it knows the defendant is going to testify because the state knows the rules of evidence that even a single felony conviction impacts a person's credibility. And here we have four convictions. All four are convictions involving dishonesty, and one conviction he was actually awaiting trial when he was testifying, and that was the attempt to aggravate a criminal sexual abuse. Benjamin's testimony must stand on its own because the state presented no other eyewitness. Even though Benjamin testified this happened at or around a gathering, but no one else corroborated his testimony, which leaves us with the state's credible evidence, which is that Benjamin was shot. Officers searched a Monte Carlo parked at a home, two plots down from Mr. Amos's house. A ballistics evidence showed the rifle inside the Monte Carlo's trunk was connected to the shooting. A DNA evidence showed the rifle contained a mixture of at least three people's DNA, and the magazine contained at least four people's DNA. The forensic scientists were unable to determine major or minor contributors, meaning they were unable to connect Mr. Amos to the rifle whatsoever. But none of this evidence comes close to proving Mr. Amos guilty beyond a reasonable doubt. It barely even reaches a clear and convincing standard, and the closest connection the state makes between Mr. Amos and the car is hearsay evidence. The state's evidence is just not enough to convict Mr. Amos, and for that reason we ask this court to outright reverse his convictions. And briefly moving to issue two, if this court does not outright reverse Mr. Amos's convictions, we would ask for a new trial based on improper hearsay. Here Detective Hall testified the Monte Carlo was registered to Shambraya Williams, and then took it a step further by saying officers know Williams is the mother of Mr. Amos's child. But it's well established that information regarding registration of a car is hearsay, and the state has to provide a copy of the registration as well as a witness who can lay the foundation for that document. And this testimony prejudiced Mr. Amos because it allowed the court to infer a connection between Mr. Amos and the Monte Carlo apart from Benjamin's testimony, which I've already argued is inherently unreliable. You know, we have the rules of evidence to guide a trier of fact to determine whether a witness is or is not credible, and here Benjamin checked so many boxes. He has four convictions involving dishonesty, he lied under oath, he wrote two recantation statements. Both recantation statements said he was on drugs at the time, he spoke with the police, but then he testified he had not taken any drugs that day. It also claimed that he was under no distress, but then testified that he was forced, but then later described a quid pro quo voluntary exchange. And finally, when confronted with the first recant, with the recantations, he admits, I write things all the time. And when a witness has checked all of these boxes for what would make a witness unreliable and uncredible, you know, we have to draw a line somewhere. And in this case, if Benjamin is considered a credible witness, then it begs the question, who is not a credible witness? And if your honors do not have any other questions, I will finish my argument on rebuttal. Thank you. Uh, Justice McHaney or Justice Moore, do you have any questions for Ms. Cenzanetti? No questions. All right. And obviously you'll have your time for your rebuttal. Ms. Raymond, if you're ready, go right ahead. May it please the court, your honors, counsel, my name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Just to address the, let's address these recantation statements, um, that defendant makes much of. These recantation statements were not sworn statements, firstly. Uh, the statements were made, um, yes, by defendant in writing. He explained his reasoning for both of those statements. He was upfront about the fact that he made those statements in an effort to get money to get out of jail, which regarding his felony convictions and the reason that he was incarcerated. Defendant was upfront about all of this. In fact, he started off his testimony acknowledging such those felony convictions could be used for impeachment purposes. However, that was not necessary because Benjamin was credible and he was, um, he testified, his testimony was corroborated by the state's evidence. In those recantation statements, Benjamin never says that defendant did not shoot him. The recantation statements were in regard to Hines who initially shot Benjamin with a different gun. They do not mention defendant at all. Um, those recantation statements are not that recantation statements. They're just statements the defendant made that do not have anything to do with defendant. Um, when it comes to his credibility, the defendant points to a discrepancy in his testimony regarding, for example, his, um, description of the gun. And he, minor inconsistencies in his testimony are not fatal to his credibility, nor do they, um, render his entire testimony unreliable. He testified regarding that the gun may have had, did have a wooden stock. However, the picture shows it did not have a wooden stock. He explained that by stating, I was focused on the people with guns. There were multiple people surrounding me who had guns. Uh, so any indiscrepancy regarding that, he described the, the rest of the, the gun as being shiny and like that is consistent with the photo that was shown. Uh, so regarding the reasonable doubt issue, Benjamin testified that when he got to the hospital, the police were there and he let them know that it was defendant and Hines who shot him and that they were looking for a red Monte Carlo. That defendant drove every day, which he had ridden in with defendant in the past. The police officers use that information to secure a search warrant for defendants home. And in the, while they were in the area, they noticed a detective hall noticed a red Monte Carlo, which they were looking for in this case. So they, he says, we ran the registration meeting hall and another officer and hall had personal knowledge that the information came back to somebody named Mrs. Chambray or Williams, who was the mother to the child of defendant. After that, they took the car. He spoke to Albert Amos, and then they towed the car to the police station where it was searched in the trunk of that car was an AK 47 ballistics experts test, but expert testified that the bullets fired from that AK 47 were the same as the ones in at the scene of the crime where Benjamin was shot. Were there multiple DNA profiles on the gun? Yes, there were. The expert testified that there were, they were unable to just get specifically defendants off the gun. That means there may have been other people who had access to the gun in the past. That doesn't mean that there were other people who had access to defendants car. Benjamin testified that defendant drove that car every day. Regarding this hearsay that defendant claims detective hall testified to was not hearsay. He did not testify to a conversation he had with another officer with Albert Amos. He testified he had personal knowledge of this in that he and another officer ran the information. Detectives are allowed to testify to the steps they took in an investigation to get where they got without his testimony stating, this is the process that we went through. Then it would just be left out in the open without, well, where did you get this information? So it has been, case law does support the fact that detectives are allowed to testify regarding the steps they took in an investigation. It is the state's position that despite his past felonies, Benjamin was a credible witness. He testified regarding the events that happened. He testified that, for example, defendant shot him with the AK-47. He stopped shooting him and then turned away and then came back and started shooting him again. That was consistent with what the officers in the area heard. They heard shots fired, they heard a cease, and then they heard shots fired again. His testimony is corroborated. Because he has past felonies does not mean that his testimony here now is not credible. He testified that defendant was the person who shot him and he hasn't wavered in that. So it's the state's position that he was credible and that, as a result, you should affirm defendant's conviction and sentence. Counsel, if the trial court had made a finding that he found Benjamin's testimony not credible, is there enough to convict the defendant beyond a reasonable doubt? The state believes so, yes, based on the fact that the gun was found in a car that defendant was known to drive every day and that was registered to the mother of his child. And those same bullets that were from that gun were found at the scene as well. So it is the state's position that the totality of the evidence, circumstantial, does prove defendant guilty beyond a reasonable doubt. If there are no further questions, the state would just ask that you affirm defendant's conviction and sentence. Thank you. Thank you, Ms. Raymond. Before we move on, Justice McHaney or Justice Moore, any questions? Any further? No questions. Thank you. Ms. Sanzanetti, go right ahead with your rebuttal. I would like to start where the state finished in response to Justice McHaney's question about whether the state has enough to prove Mr. Amos guilty without Benjamin's testimony. And the answer to that is a resounding no. Without Benjamin's testimony, we have a car that is registered to another person, which is hearsay. So first, I would argue that Your Honor shouldn't even consider who the car was registered to. But even if you do consider who the car was registered to, it was registered to a different person than Mr. Amos. And there was no testimony regarding the current relationship status between Mr. Amos and Williams. For all we know, they no longer have a good relationship. She is the mother of his child, but they could be on very bad terms. And it's possible that she would never want him to drive her car. We're not arguing that the rifle found in the Monte Carlo was not related to the shooting. But the fact that there's so much DNA evidence on it, that the reason the forensic scientists could not say Mr. Amos did or did not touch the rifle in the magazine, it's frankly because so many people had touched it. And it's impossible to know whether he touched it at all, or the last time he had touched it. And even if he had, it doesn't show that he is the one who shot Benjamin. The Monte Carlo is also parked two plots down from Mr. Amos's house. And, you know, without Benjamin's testimony, making connections between Mr. Amos and this testimony, there's just not enough to convict him beyond a reasonable doubt. The state also focuses a lot on Benjamin's felony convictions. And I know I spent most of my opening talking about his other impeachment, but I would just reiterate, it's not just his convictions. It's also his recantations, the substance of his recantations, that he was willing to enter into a quid pro quo exchange for money and to have his bond posted. And in addition, lying under oath when he says he was forced to write these, but then describes a voluntary quid pro quo exchange. Lastly, I want to touch on the hearsay. Courts have repeatedly chastised the state for doing exactly what it's attempting to do in this case, and that is expand the course of investigation exception to hearsay. Um, case law has long held that officers are allowed to talk about a, or mention a conversation or an event occurred, but they are not allowed to talk about the substance of that event or the conversation. Detective Hall could have said, we ran the registration information, which led us to a search warrant that falls within the here, the course of investigation exception. What he was not allowed to do was say the information that he found from the registration, which is that it was registered to Shambraya Williams, and then took it a step further to say who he and officers know Shambraya Williams to be. That is not allowed. Well, let me stop you there, counsel. If would we be having a somewhat different conversation if we were dealing with a jury trial versus a bench trial, where in the bench trial, the judge is assumed to know the law and follow the law? Possibly. But in this case, the court did find it important that there was a connection between the Monte Carlo and Mr. Amos. The court actually misstated the facts in his findings and said the Monte Carlo was parked on Mr. Amos's property, which is not what was testified to. And so I think that goes into both this conversation about hearsay and what a court should and should not consider and into our sufficiency argument about the trier of fact and how they viewed the evidence, because we know he got some of the evidence wrong. I see him just So in closing, the state has to prove Mr. Amos guilty beyond a reasonable doubt, and it has failed to do so here, where the only substantial evidence against Mr. Amos comes from a felon who writes things all the time. I would ask this court to outright reverse Mr. Amos's convictions. And in the alternative, I would ask this court to give Mr. Amos a new trial based on hearsay evidence, which allowed the court to draw a connection between Mr. Amos, the Monte Carlo, and the rifle found within it. Thank you. Thank you, counsel. Before we let counsel go for the day, Justice McHaney or Justice Moore, do you have any final questions? No further questions. No other questions. Well, thank you, counsel. Obviously, we'll take the matter under advisement. We will issue an order in due course.